IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 23-00187-WS |
| | ) |
| JONATHAN TAYLOR RANDLE | ) |

## PLEA AGREEMENT

The defendant, **JONATHAN TAYLOR RANDLE**, represented by his counsel, and the United States of America have reached a plea agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

### RIGHTS OF THE DEFENDANT

1. The defendant understands his rights as follows:

    a. To be represented by an attorney;

    b. To plead not guilty;

    c. To have a trial by an impartial jury;

    d. To confront and cross-examine witnesses and to call witnesses and produce other evidence in his defense; and

    e. To not be compelled to incriminate himself.

### WAIVER OF RIGHTS AND PLEA OF GUILTY

2. The defendant waives rights b through e, listed above, and pleads guilty to Counts Six and Ten of the Indictment, charging violations of Title 18, United States Code, Sections 1344(1) (Bank Fraud) and 1028A(a)(1) (Aggravated Identity Theft), respectively.

1

Case 1:23-cr-00187-WS-N   Document 33   Filed 02/08/24   Page 2 of 16   PageID #: 91

3. The defendant understands that the statements he makes under oath in the plea of guilty must be completely truthful and that he can be prosecuted for making false statements or perjury, or receive a perjury enhancement at sentencing, for any false statements he makes intentionally in this plea of guilty.

4. The defendant expects the Court to rely upon his statements here and his response to any questions that he may be asked during the guilty plea hearing.

5. The defendant is not under the influence of alcohol, drugs, or narcotics. He is certain that he is in full possession of his senses and is mentally competent to understand this Plea Agreement and the guilty plea hearing that will follow.

6. The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. He has discussed the facts of the case with his attorney, and his attorney has explained to the defendant the essential legal elements of the criminal charges that have been brought against him. The defendant's attorney has also explained to the defendant his understanding of the United States' evidence and the law as it relates to the facts of his offenses.

7. The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charges beyond a reasonable doubt. The defendant and his counsel have discussed possible defenses to the charges. The defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice of his attorney.

8. A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that

2

the Factual Resume is true and correct. Alterations to the Plea Agreement or Factual Resume initialed only by the defendant and his counsel are not part of this agreement and are not agreed to by the United States.

9. This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations, apart from those representations set forth in this Plea Agreement. There have been no promises from anyone as to the particular sentence that the Court will impose. The defendant is pleading guilty because he is guilty.

10. The defendant also knowingly and voluntarily waives all rights, whether asserted directly or through a representative, to receive from the United States after sentencing any further records, reports, or documents pertaining to the investigation or prosecution of this matter. This waiver includes, but is not limited to, rights under the Freedom of Information Act and the Privacy Act of 1974.

## PENALTY

11. The maximum penalty the Court could impose as to Count Six of the Indictment is:

    a.  Thirty (30) years' imprisonment;

    b.  A fine not to exceed $1,000,000;

    c.  A term of supervised release of five (5) years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release;

    d.  A mandatory special assessment of $100.00; and

    e.  Such restitution as may be ordered by the Court.

12. The maximum penalty the Court could impose as to Count Ten of the Indictment is:

    a. A mandatory term of two (2) years' imprisonment, which must run consecutively to any other term of imprisonment imposed on the defendant;

    b. A fine not to exceed $250,000;

    c. A term of supervised release of one (1) year, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release;

    d. A mandatory special assessment of $100.00; and

    e. Such restitution as may be ordered by the Court.

## SENTENCING

13. The Court will impose the sentence in this case. The United States Sentencing Guidelines are advisory and do not bind the Court. The defendant has reviewed the application of the Guidelines with his attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. The defendant understands that he will not be allowed to withdraw his guilty plea if the advisory guideline range is higher than expected, or if the Court departs or varies from the advisory guideline range.

14. The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any

4

particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

15. The United States will provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

16. Both the defendant and the United States are free to allocute fully at the time of sentencing.

17. The defendant agrees to tender $200.00 to the U.S. District Court Clerk in satisfaction of the mandatory special assessment in this case. The United States reserves the right to withdraw any favorable recommendations it may agree to within this document if the defendant fails to pay the special assessment prior to or at the time of his sentencing.

## RESTITUTION

18. Pursuant to 18 U.S.C. §§ 3556 and 3663A, restitution is mandatory. The defendant agrees to make full restitution in an amount to be determined by the Court at sentencing and as to all relevant conduct regardless of whether it relates to the counts of conviction.

## FORFEITURE

19. The defendant agrees to forfeit to the United States any right, title, and interest in all assets subject to forfeiture under the notice of forfeiture contained in the charging document, including property specified in any bill of particulars and

property previously seized by the government for administrative, civil, or criminal forfeiture. The defendant further consents to the filing of a motion for a preliminary order forfeiting such property and any dollar amount specified in the notice of forfeiture or bill of particulars, and the defendant confesses the requisite nexus between the property and the charge of the conviction. The defendant hereby withdraws any petition for remission or claim for such property for such property and further waives any right to contest or appeal the government's forfeiture proceedings for any reason, including on grounds that the forfeiture constitutes an unconstitutionally excessive fine or punishment, and in any manner, including by claim, petition, appeal or collateral attack.

## FINANCIAL OBLIGATIONS

20. The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

## UNITED STATES' OBLIGATIONS

21. The United States will not bring any additional charges against the defendant related to the facts underlying the Indictment and will move to dismiss any remaining charges against the defendant once sentence is imposed in this case. This agreement is limited to the United States Attorney's Office for the Southern District

6

of Alabama and does not bind any other federal, state, or local prosecuting authorities.

22. The United States will recommend to the Court that the defendant be sentenced at the low end of the advisory sentencing guideline range as determined by the Court.

## LIMITED WAIVER OF RIGHT TO APPEAL AND WAIVER OF COLLATERAL ATTACK

23. As part of the bargained-for exchange represented in this plea agreement, and subject to the limited exceptions below, the defendant knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Accordingly, the defendant will not challenge his guilty plea, conviction, or sentence in any district court or appellate court proceedings.

   a. **EXCEPTIONS.** The defendant reserves the right to timely file a direct appeal challenging:

      (1) any sentence imposed in excess of the statutory maximum;

      (2) any sentence which constitutes an upward departure or variance from the advisory guideline range.

   The defendant also reserves the right to claim ineffective assistance of counsel in a direct appeal or § 2255 motion.

24. If the United States files a notice of appeal and such appeal is authorized by the Solicitor General, the defendant is released from the appellate waiver.

7

25. The defendant further reserves the right to timely move the district court for an amended sentence under 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the sentence.

26. If the defendant receives a sentence within or below the advisory guideline range, this plea agreement shall serve as the defendant's express directive to defense counsel to timely file a "Notice of Non-Appeal" following sentencing, signed by the defendant.

## VIOLATION OF AGREEMENT

27. The defendant understands that if he breaches any provision of this Plea Agreement, the United States will be free from any obligations imposed by this agreement, but all provisions of the agreement remain enforceable against the defendant. In the exercise of its discretion, the United States will be free to prosecute the defendant on any charges of which it has knowledge. In such event, the defendant agrees not to assert any objections to prosecution that he might have under the Sixth Amendment and/or Speedy Trial Act.

28. In addition, if the defendant is released from detention prior to sentencing, he understands that the United States will no longer be bound by this agreement if he violates any condition of his release prior to sentencing or prior to serving his sentence after it is imposed.

## ENTIRETY OF AGREEMENT

29. This document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all the parties.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

Date: January 2, 2024

Justin D. Roller
Assistant United States Attorney

Date: 1-4-2024

Kasee S. Heisterhagen
Assistant United States Attorney
Deputy Chief, Criminal Division

I have consulted with my counsel and fully understand all my rights with respect to the offenses charged in the Indictment pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt.

Date: 2/27/2024

Jonathan Taylor Randle
Defendant

I am the attorney for the defendant. I have fully explained his rights to him with respect to the offenses charged in the Indictment in this matter. I have carefully reviewed every part of this Plea Agreement with him. To my knowledge, his decision to enter into this agreement is an informed and voluntary one. I have carefully reviewed the Factual Resume, incorporated herein, with the defendant and to my knowledge, his decision to stipulate to the facts is an informed, intelligent and voluntary one.

Date: 2/27/2024

Gordon G. Cunningham
for Willie J. Huntley, Jr.
Willie J. Huntley, Jr.
Attorney for Defendant

10

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 23-00187-WS |
| | ) | |
| JONATHAN TAYLOR RANDLE | ) | |

## FACTUAL RESUME

The defendant, **JONATHAN TAYLOR RANDLE** ("RANDLE"), admits the allegations of Counts Six and Ten of the Indictment.

## ELEMENTS OF THE OFFENSE

**RANDLE** understands that in order to prove a violation of Title 18, United States Code, Section 1344(1), as charged in Count Six of the Indictment, the United States must prove:

First: the defendant knowingly carried out or attempted to carry out a scheme to defraud a financial institution by using false or fraudulent pretenses, representations, or promises about a material fact;

Second: the false or fraudulent pretenses, representations, or promises were material;

Third: the defendant intended to defraud the financial institution; and

Fourth: the financial institution was federally insured.

**RANDLE** further understands that in order to prove a violation of Title 18, United States Code, Section 1028A(a)(1), as charged in Count Ten of the Indictment, the United States must prove:

First: the defendant knowingly transferred, possessed, or used another person's means of identification;

Second: without lawful authority; and

Third: during and in relation to the eligible felony alleged in the Indictment, that is, bank fraud.

1

## OFFENSE CONDUCT

**RANDLE** admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case. This statement of facts is provided solely to assist the Court in determining whether a factual basis exists for **RANDLE's** plea of guilty. The statement of facts does not contain each and every fact known to **RANDLE** and to the United States concerning the defendant's involvement in the charges set forth in the plea agreement. All dates, times, amounts, and locations referenced below are approximations.

### Overview

**RANDLE** admits that from at least October 2022, and continuing through his arrest in May 2023, in the Southern District of Alabama and elsewhere, he knowingly executed, and attempted to execute, a scheme and artifice to defraud the Banks and Credit Unions listed in paragraphs 1 and 2 of the Indictment, financial institutions the deposits of which were, at the time of **RANDLE's** offenses, federally insured by the Federal Deposit Insurance Corporation and the National Credit Union Administration. The purpose of **RANDLE's** scheme and artifice was to defraud the Banks and Credit Unions of money and property.

To carry out his scheme and artifice, **RANDLE** admits that he committed, among other things, the following acts: (a) obtaining, possessing, and opening stolen U.S. mail to acquire checks and personal identifiable information ("PII") of other people without their authorization; (b) producing counterfeited and forged checks using PII derived from checks stolen from the U.S. mail; (c) producing and using false identification documents, including driver's licenses; (d) obtaining, possessing, and using means of identification of other persons, including names, addresses, bank account numbers, phone numbers, and social security numbers; (e) making

unlawful mobile and automated teller machine ("ATM") deposits of counterfeited, forged, and stolen checks; and (f) making unlawful cash withdrawals and transfers using the proceeds of deposits of counterfeited and forged checks.

### Feb./Mar. 2023: genesis of investigation & discovery of RANDLE's fingerprints on mail-theft devices

In February and March 2023, agents with the United States Postal Inspection Service ("USPIS") began receiving complaints about individuals "fishing" mail from blue U.S. postal collection boxes in Mobile, Alabama and the Mississippi Gulf Coast area. "Fishing" is a term used to describe when an individual combines a flexible object, such as a rope or coat hanger, with an adhesive object, oftentimes a rat trap, and forces the device into a blue collection box with the intention of having the mail inside the box stick to the adhesive end so that it can be pulled out of the box and stolen.

On March 24, 2023, the postmaster of the post office in Escatawpa, Mississippi, notified USPIS that they had located a rat trap stuck to a postal collection tub inside a blue collection box when they opened the box to retrieve mail. USPIS collected the rat trap and sent it to the USPIS forensic laboratory in Dulles, Virginia for fingerprint analysis. The laboratory found five of **RANDLE's** fingerprints on the paper portion of the rat trap. On the paper portion of another glue trap found in a blue collection box in Escatawpa, the laboratory found five of **RANDLE's** fingerprints.

Later, on March 28 and April 4, 2023, an employee of the Crichton post office in Mobile reported having found rat traps stuck to stuck to postal collection tubs inside blue collection boxes near the post office when she opened the boxes to retrieve mail. Inspectors collected the rat traps and sent them to the USPIS forensic laboratory for testing for fingerprints. On the trap recovered on March 28, 2023, the laboratory found three of **RANDLE's** fingerprints on the sticky side of the

3

trap, and seven of **RANDLE's** fingerprints on the non-sticky side of the trap.

### May 2023: agents execute a search warrant at RANDLE's house in Mobile and recover evidence of his mail theft and frauds

On May 1, 2023, agents drove to **RANDLE's** house in Mobile to conduct surveillance. The house was the listed address on **RANDLE's** Alabama driver's license. Agents saw **RANDLE** leaving the house in a silver Toyota Camry.

On May 10, 2023, agents drove to **RANDLE's** house again and noticed that its garbage can had been left at the end of the driveway on the curb for service, as were other neighboring garbage cans. Agents opened the can and noticed that the top bag of trash was full of mail, so they seized it and took it to the USPIS office in Mobile to review its contents. Inside the bag, agents found dozens of pieces of stolen mail, including apparent bill payments with checks missing from the D'Iberville, Mississippi area. Agents began confirming with victims that the checks had indeed been inside many of the envelopes and they had all been placed into blue collection boxes outside of post offices in the D'Iberville area.

On May 11, 2023, agents executed a federal search warrant at **RANDLE's** house in Mobile. Agents found, among other things, hundreds of checks and pieces of stolen mail, including checks that had been stolen, altered, and deposited that form the basis of several bank fraud and identity-theft counts in the Indictment. Agents also found a notebook containing stolen PII of identity-theft victims, **RANDLE's** Samsung SM-A102U cell phone (International Mobile Equipment Number 356273101108234), a laptop, several debit/credit cards in the name of other people, a rifle near the fraud evidence, and an envelope containing dozens of checks stolen from the U.S. mail. Agents also discovered a counterfeit Illinois driver's license bearing **RANDLE's** photograph but the PII of an identity-theft victim. Agents searched **RANDLE's** Samsung

4

SM-A102U cell phone which contained evidence of his fraud scheme and which **RANDLE** agrees is forfeitable to the United States.

### Oct. 2022–May 2023: agents use information seized from RANDLE's house to identify fraudulent transactions he committing using stolen PII and counterfeited/forged checks

Using the debit/credit cards seized from **RANDLE's** house, agents obtained records from Bank of America, N.A. ("BoA") and Regions Bank ("Regions") for any deposits into the accounts of the individuals whose names appeared on the cards. Agents identified numerous instances between October 2022 and May 2023 in which **RANDLE** conducted fraudulent check deposits and corresponding cash withdrawals. Bank surveillance video captured **RANDLE** conducting each of the fraudulent transactions. **RANDLE** admits that he conducted each of the fraudulent check deposits and corresponding cash withdrawals referenced in the Indictment.

For purposes of his guilty plea to Counts Six and Ten of the Indictment, **RANDLE** admits that on April 12, 2023, he deposited the following three stolen and forged checks into E.M.Y.'s Regions account (number x9510) at the same ATM at Regions's "Loop" branch in Mobile: (1) a check (number 1900) in the amount of $1,258.00, drawn on the Regions account (number x4609) of identity-theft victims D.M.B. and T.L.B.; (2) a check (number 1899) in the amount of $1,608.00, drawn on the Regions account (number x4609) of D.M.B. and T.L.B.; and (3) a check (number 9264) in the amount of $2,490.00, drawn on the Regions account (number x7508) of another identity-theft victim. Regions surveillance video captured **RANDLE** making the deposits from the same silver Toyota Camry law enforcement surveilled him driving away from his house. The checks corresponding to D.M.B. and T.L.B. contained their stolen means of identification, including their names, address, bank account numbers, phone numbers, and social security numbers. Law enforcement interviewed D.M.B. and T.L.B., who confirmed that **RANDLE** had no lawful authority to transfer, possess, or use their stolen means of identification.

5

**Sentencing agreements**

The parties agree for sentencing purposes that **RANDLE** should be held responsible for intended loss of more than $95,000 but less than $150,000. U.S.S.G. § 2B1.1(b)(1)(E). The parties further agree for sentencing purposes that **RANDLE's** offenses involved (a) more than 10 victims; (b) conduct constituting sophisticated means; (c) the possession and use of device-making equipment and authentication features; and (d) the possession of a dangerous weapon. U.S.S.G. §§ 2B1.1(b)(2)(A)(i), (b)(10)(C), (b)(11), and (b)(16).

AGREED TO AND SIGNED.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

Date: January 2, 2024

Justin D. Roller
Assistant United States Attorney

Date: 1-4-2024

Kasee S. Heisterhagen
Assistant United States Attorney
Deputy Chief, Criminal Division

Date: 1-20-2024

Jonathan Taylor Randle
Defendant

Date: 1-20-2024

Willie J. Huntley, Jr.
Attorney for Defendant

6